## BANK OF AMERICA
### v.
### The UNITED STATES.
### No. 109–65.

United States Court of Claims.

May 12, 1967.

Bayley Kohlmeier, San Francisco, Cal., attorney of record, for plaintiff.

Michael I. Sanders, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

LARAMORE, Judge.

This tax refund suit presents the question of whether a taxpayer which chooses to deduct foreign income taxes on its Federal income tax return can change its choice and claim a credit after the expiration of the normal 3-year limitations period. In issue are sections 901(a) and 6511(d) (3) (A) of the Internal Revenue Code of 1954.[1] The former allows taxpayers to choose the credit and specifies the period in which the choice may be made or changed. The latter provides a special 10-year limitations period for refund claims "relat[ing] to" overpayments attributable to foreign taxes "for which credit is allowed [under section 901(a)]." Plaintiff takes the position that section 901(a) refers to section 6511(d) (3) (A), so that the period for election is 10 years. Defendant urges that Congress never intended such a result, and that this is made clear by the legislative history to.

---

[1]. All section references are to the Internal Revenue Code of 1954. 26 U.S.C. (1964 Ed.). As the text makes clear, certain of the provisions enacted in 1954 have been amended, so that the earlier language will not be found in the 1964 edition of 26 U. S.C.

the Act in 1960 which changed the original 1954 language and was expressly given retroactive effect. We decide that plaintiff is entitled to recover, although our grounds for decision are more narrow than those urged by plaintiff.

Plaintiff is chartered as a corporation under the laws of the United States and maintains its principal office and place of business in New York City.[2] In 1956 and 1957 it engaged in business in and derived income from sources within France and Germany. In 1957, its activities also extended to and foreign-source income was received from India, Lebanon, and Mexico. Plaintiff paid substantial taxes to the various foreign countries based on the income earned within them.[3] It could have chosen to credit these foreign income taxes against its Federal income taxes under section 901(a). It chose instead to deduct them in computing 1956 and 1957 income taxes, as it had done for 1954. Section 164(a). This procedure was allegedly necessary because "[a]t the time plaintiff's income tax return[s] * * * [were] filed, plaintiff did not have the receipts and information required by the Federal Income Tax Regulations to be filed by a taxpayer who chooses to claim a credit for foreign taxes under [section 901] * * *."[4]

When plaintiff did compile the necessary receipts, it chose to "have the benefits of" the foreign tax credit and recomputed the Federal income tax accordingly; this resulted in overpayments for which plaintiff claimed refunds.[5] It filed its claim for the taxable year 1954 on February 18, 1959, more than three years after the return was filed. The claim was allowed and the Internal Revenue Service made a refund in August 1959. Like-

---

2. Plaintiff is a wholly-owned subsidiary of Bank of America National Trust and Savings Association which has its principal office and place of business in San Francisco, California.

3. In 1956, plaintiff's total taxable income from all sources was $2,817,449.96. Of this, $450,057.65 was derived from sources within the Federal Republic of Germany and subject to income taxes there in the amount of $260,112.93. $27,083.71 came from sources in France. This income was subject to $24,212.50 of French taxes. Under sections 901 and 904, plaintiff was entitled to credit against its Federal income taxes $233,151.41 and $14,030.65 of the taxes paid to the Federal Republic of Germany and France, respectively.

In 1957, plaintiff's total taxable income from all sources was $3,874,016.55. Of this $439,693.34 was derived from sources within the Federal Republic of Germany and subject to income taxes there in the amount of $257,328.06. $361,813.49 came from sources in France. This income was subject to $204,441.43 of French income taxes. $197,937.53 came from sources in Lebanon. The income taxes levied there totaled $39,286.20. Income from Indian sources was $9,118.55 and income taxes there were $2,317.60. Dividend income from a 20 percent owned Mexican corporation was $4,200. Under section 902, plaintiff was deemed to have paid income taxes to Mexico of $1,140.12. Under sec-

tions 901, 902 and 904, plaintiff was entitled to credits against Federal income taxes of the following: $228,016.30, for German taxes; $187,629.34, for French taxes; $39,286.20, for Lebanese taxes; $2,317.60 for Indian taxes; and $1,140.12, for Mexican taxes.

4. Counts 10 and 28 of plaintiff's petition. It is not clear from the record or a review of the statutory scheme why plaintiff could not have elected the credit for the years in issue at the time it filed returns. Section 905(b) and the regulations thereunder, Treas.Regs. § 1.905–2, do set out specific requirements for proving entitlement to the credit, but it is not clear that plaintiff could not have met the requirements had it tried. To take the deductions, it would, of course, have to be able to prove that the foreign taxes accrued in the year of deduction. §§ 164(a) (3), 446, 461(a). Plaintiff suggests in its unrebutted allegations that the standard of proof for the credit route is higher. This is possible as a reality of administration; it has no bearing on the outcome of this case, however.

5. Plaintiff's total claim for refund is $276,551.60, plus interest. This figure is $288.02 more than plaintiff originally claimed in its claim for refund filed on August 10, 1961. The Revenue Agent who audited the claim recommended allowance of the higher figure. The government apparently does not object to this computation.

wise, for the taxable years 1956 and 1957, plaintiff filed claims for refund more than three years after the returns were filed. The Revenue Agent who audited these refund claims recommended that they be allowed. The Appellate Division affirmed this conclusion, and informed plaintiff by letter that it was forwarding the case for final review to the Joint Committee on Internal Revenue Taxation pursuant to section 6405(a).[6] Evidently the Joint Committee disagreed, because plaintiff was later informed by the Appellate Division that it had concluded "that there are no deficiencies or over-assessments in this case." The following explanation was given:[7]

> It has been concluded that your claims for refund for 1956 and 1957 in the total amount of $276,263.58 should be disallowed in full for the reason that you failed to file your claims for refund within the applicable period of limitations provided by Section 6511(a) of the Internal Revenue Code of 1954. It is held that the ten-year period of limitations provided by Section 6511(d) (3) of the Internal Revenue Code of 1954 is not applicable as, having claimed deductions for foreign taxes on your 1956 and 1957 returns, you have failed to make a timely choice to have the benefits of the allowance of the foreign tax credit provided by Section 901 of the Internal Revenue Code of 1954 within three years from the filing of your 1956 and 1957 returns.

Section 901(a) provides that "[s]uch choice [of the foreign tax credit instead of the deduction] for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year." Section 6511 (a) prescribes the *"Period of limitation on filing claim"*—"Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which

tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed * * *." Without more, there would be no question that an election could not be changed more than 3 years from the return filing date. However, there is more. Subsection (d) of section 6511 contains *"Special rules applicable to income taxes,"* and its paragraph (3) (A) sets out a *"Special period of limitation with respect to foreign taxes paid or accrued"* which provides that "in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years * * *" if the claim for refund "relates to an overpayment attributable to any taxes paid or accrued to any foreign country * * * for which credit is allowed * * * [under] section 901."

Plaintiff takes the position that elections may be "made or changed at any time" within the "special" 10-year period, and that its elections for the taxable years 1956 and 1957 were therefore timely. Defendant counters with the proposition that the 10-year period is available only for purposes of determining the size of the foreign tax credit, and not for purposes of changing a choice. We think plaintiff is correct insofar as the quoted provisions relate to the taxable years here in issue; we reserve decision on their application to later years.

At the outset, some history is in order. Section 901(a) as enacted in 1954 read as follows: "Such choice may be made or changed at any time *prior to* the expiration of the period prescribed for making a claim for credit or refund of the tax *against which the credit is allowable.*" [Italic supplied.] In an Act of September 14, 1960, 74 Stat. 1010, 1013, "[t]o amend the Internal Revenue Code of 1954 to permit taxpayers to elect an overall limitation on the foreign tax credit," Congress added after the words "such choice" the phrase "for any taxable year," and substituted for the two italicized items

---

6. This is the required procedure for all refunds in excess of $100,000.

7. Letter of April 22, 1963.

above, the words "before" and "imposed by this chapter for such taxable year." The Act provided that this "amendment * * * shall apply with respect to taxable years beginning after December 31, 1953, and ending after August 16, 1954" —in effect, a retroactive application.

The "General Explanation" portions of the accompanying committee reports stated the following: " * * * the bill provides that generally the 3-year statute, but in no case the 10-year statute, is to be available for choices between the selection of the deduction or credit * * * for taxable years beginning after December 31, 1953, and ending after August 16, 1954." H.Rep.No. 1358, 86 Cong., 2d Sess., 1960-2 Cum.Bull. 865, 869. See S.Rep.No. 1393, 86th Cong., 2d Sess., 1960-2 Cum.Bull. 874, 880. The "Technical Explanation" was more explicit:

> Subsection (b) of section 2 of the bill [section 3(b) of the bill as enacted] amends the second sentence of section 901(a) of the 1954 Code to make it clear that the choice as to whether to take a foreign tax credit for any taxable year, or to take the foreign taxes as a deduction for such year, must be made or changed before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed for such taxable year by chapter 1 of the 1954 Code. This period will usually expire at the time prescribed by section 6511(a) (generally, 3 years from the time the return was filed). * * *

> It is to be noted that the period prescribed by the second sentence of section 901(a) is not extended by section 6511(d) (3). Section 6511(d) (3) provides, in effect, a 10-year period of limitation for claims for credit or refund of overpayments attributable to foreign taxes. However, for this 10-year period to be applicable, the choice to take the foreign tax credit (in lieu of the deduction) must have been timely made (that is, made within the time prescribed by the second sentence of sec. 901(a)) U.S.Code Congressional

and Administrative News, p. 3784 [1960-2 Cum.Bull., at 872-873, 884-885.]

On December 30, 1964 the regulations were amended to enunciate the rules stated in the 1960 Act committee reports. Treas.Reg. § 1.901-1(d).

Looking back to the period before the 1960 Act, we are of the view that a normal reading of sections 901 and 6511 would have been the one plaintiff urges. Section 901(a) permitted a change of choice at any time prior to the expiration of the period prescribed for making a claim for refund of Federal income taxes. Section 6511(a) referred to a period of three years, but subsection (d) (3) extended that period to 10 years for claims relating to overpayments attributable to the section 901 credit. The regulations, although not expressly stating that a choice could be changed within the 10-year period, advised taxpayers to "[s]ee section 6511(a) and (d) (3)" in a provision entitled *"Period during which election can be made or changed."* Treas. Reg. § 1.901-1(d) (1957). This looks like an interpretation that the choice may be changed at any time prior to the expiration of the 10-year period.

Had a taxpayer thought there was any ambiguity, he would not have been aided by the legislative history of the 1954 enactment. The committee reports are really neutral, although they can be said to favor the 10-year view insofar as they suggest that the extended period applies "with respect to *refunds resulting from* foreign taxes * * * which may be claimed as a credit * * * under section 901 * * *." [Emphasis added.] S.Rep.No. 1622, 83d Cong., 2d Sess., 3 U.S.Code Cong. & Ad.News, pp. 4629, 5235 (1954); H.Rep.No. 1337, 83d Cong., 2d Sess., 3 U.S.Code Cong. & Ad.News, pp. 4025, 4563 (1954). The words "refunds resulting from" are possibly more general than the words "relates to an overpayment attributable to" which are used in section 6511(d) (3)—i. e., "overpayment" can be read as a word of art and given a strained meaning which fa-

vors the government's position.[8] It can be inferred from the committee reports that no strained meaning was intended.

Defendant cites other history to the effect that an extended limitation period was necessary to allow taxpayers to adjust their Federal income taxes after foreign countries made adjustments. Prior to the enactment of section 6511(d) (3) the Treasury could assess additional Federal income taxes against taxpayers who obtained refunds from foreign countries after the 3-year period had run, but taxpayers were barred from claiming refunds based on foreign tax deficiencies paid after the 3-year period. See 2 House Hearings on General Revenue Revision (1953), pp. 1425–1433, Statement of Mitchell B. Carroll, Special Counsel of the Tax Committee of the National Foreign Trade Council. Assuming that Congress drafted section 6511(d) (3) with this problem in mind, there is nothing inconsistent with the purpose of correcting this problem and the application of the 10-year period to the choice of the deduction or credit.

So if we had only the 1954 language and history of section 901 before us, we would have little difficulty in reading the statute to allow 10 years to change a choice—particularly in view of the administrative policy. The difficulty is obviously presented by the 1960 Act and history, including the subsequent regulations. The 1960 changes in the original language of section 901 are so slight that they appear to be insignificant; it would seem that if the 10-year period was applicable before 1960, it should be applicable after. However, it may be sig-

nificant that changes were in fact made, and resort to the legislative history may be warranted for this reason. The legislative history, of course, rebuts our interpretation of the pre-1960 law. Analytically, it would be possible to decide that in the light of the legislative history, the apparently insignificant language changes effected a change (as contrasted with a clarification) in the "old" law, so that after 1960, choices must be within the 3-year period. But the 1960 Act is expressly retroactive; if it changes the law, it does so in a way that defeats expectancies and raises constitutional problems. This leaves us with the apparent dilemma of either having to ignore the 1960 legislative history or having to give it effect, thereby creating serious constitutional difficulties. Between these positions there is a middle course which is the route we take.

The 1960 committee reports state that the language changes were intended to "make it clear" that the choice must be made within the 3-year period. By characterizing the changes as clarifying amendments, the draftsmen of the committee reports obviously thought that the 1954 Congress intended to so limit the period for choice. If this was also the understanding or interpretation of the 1960 Congress, no difficulties would have been foreseen in a retroactive application. We are of the view that the 1954 law gave taxpayers the 10-year period to choose, and that the 1960 Congress was incorrect if it interpreted the earlier law otherwise. We will not attribute to the 1960 Congress on the basis of the committee reports, which are the sole legis-

---

8. The government argues that the quoted language "*literally* does not provide an enlarged period of time for filing a claim for refund generally or as a result of an election or change in election to claim a foreign tax credit or deduct the tax as paid or accrued." (Emphasis added.) The argument goes that the "overpayment attributable to" language refers only to *overpayments* resulting from payment or accrual of *additional* foreign taxes and not a mere change in election because if the Federal income tax was properly com-

puted under the original election, there would be no overpayment. We think this reading of "overpayment attributable to" is too limiting. Identical language is used throughout section 6511. It is unlikely that Congress intended it to have a special meaning in this subparagraph. Instead we may assume that a normal construction was intended, which is that overpayment attributable to" simply characterizes the general nature of the claim for refund.

lative history before us, an intent to *change* the law retroactively, for to do so would raise serious—and presumably unintended—constitutional difficulties. In other words, we think the 1960 Congress intended to make the 1960 language retroactive to 1954 on the condition that it be construed in the same way as the language enacted by the 1954 Congress. Regarding the period following enactment of the 1960 legislation, it is possible that the 1960 Congress intended that the choice be made within the 3-year period regardless of the intent of the 1954 Congress. It is not necessary for us to reach that question.

This approach is perhaps unusual, but we think it is the best response to the peculiarities of this case. As often happens, we are confronted with a situation in which Congress has evidently failed to consider a particular factor—here the judicial interpretation of section 901(a) as originally enacted. We have to determine what Congress would have intended had it considered this factor, and it is our conclusion, stemming from the proposition that Congress would not intentionally raise a serious constitutional problem that Congress did not intend to retroactively change the pre-1960 law even though it expressly made the new language retroactive. It simply "intended" that the new language have the meaning of the old language, at least until 1960.

Since plaintiff's claim relates to the tax years 1956 and 1957, it is entitled to the benefits of the law as it was before 1960; no decision is made with respect to the law after 1960. Plaintiff's change of choice within the 10-year period of section 6511(d) (3) (A) was timely, so it is entitled to recover on its petition. Accordingly, plaintiff's motion for summary judgment is granted, and defendant's cross-motion for summary judgment is denied. Judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 47(c) (2).