**AMPEX CORPORATION and Geosource, Inc.**

v.

**The UNITED STATES.**

**No. 499–77.**

United States Court of Claims.

April 16, 1980.

---

Dennis I. Meyer, Washington, D. C., attorney of record for plaintiff; C. David Swenson and Baker & McKenzie, Washington, D. C., of counsel.

Marc Levey, Washington, D. C., with whom was Asst. Atty. Gen., M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser and Robert S. Watkins, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and NICHOLS, Judge.

## OPINION

COWEN, Senior Judge:

Plaintiffs, Ampex Corporation and Geosource, Inc., have brought suit here seeking refunds of $149,747 and $49,855 in federal income taxes paid by Mandrel Industries, Inc. (Mandrel) for Mandrel's taxable years 1963 and 1965, respectively.[1] The refund

---

1. The parties have agreed that Geosource, Inc. is the owner of the claims for refund. Geosource's ownership came about as a result of a series of corporate acquisitions and mergers. Specifically, Ampex Corporation held 1,557,013 shares of the 1,557,394 authorized and issued shares of Mandrel's common stock as of January 11, 1973. On that date, Geosource International, Inc. (International) acquired all of the common stock of Mandrel held by Ampex. On

claims have their genesis in payments made in 1972 by Mandrel to the Government of Libya with respect to the years 1960, 1961, and 1962. Claims for refund were filed on March 6, 1974, asserting overpayments of federal income tax for 1963 attributable to foreign tax credit carryovers from 1961 and 1962 to 1963 as a result of the 1972 Libyan payments, and overpayments for 1965 attributable to a carryover of an investment tax credit to 1965 from 1963 where it could not be used due to the carryover of the foreign tax credit to that year. The parties have stipulated certain facts and defendant has moved for summary judgment on the ground that the claims for refund were not timely filed with the Internal Revenue Service. For the reasons set out herein, we hold that the claims were timely filed and accordingly deny defendant's motion.

I.

■ A. The foreign tax credit has been a fixture of the federal income tax since the first version of the credit was enacted in the Revenue Act of 1918. *See* 5 Mertens Law of Federal Income Taxation § 33.01 (1975 Revision). The purpose of the credit is to reduce the burden of double taxation resulting from the taxation of the same income by both the United States and a foreign nation. *Burnet v. Chicago Portrait Co.*, 285 U.S. 1, 51 S.Ct. 187, 75 L.Ed. 349 (1932); *American Chicle Co. v. United States*, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591 (1942). The current Internal Revenue Code provisions pertaining to the foreign

tax credit are set out in sections 901–908.[2] A brief summary of a few of these provisions will place the issue here in context.

In general, section 901 allows eligible taxpayers to choose to take a credit for income taxes paid to foreign countries in lieu of claiming a deduction for those taxes under section 164(a)(3). The amount of the foreign tax credit otherwise available under section 901 is limited by section 904(a). During the years relevant here, section 904(a) set forth a per-country limitation and an overall limitation, with the per-country limitation applicable unless the taxpayer elected the overall limitation.[3] The per-country limitation restricted the credit to an amount not in excess of the same proportion of the United States tax liability which the taxpayer's taxable income from sources within each country bore to his entire taxable income. The overall limitation restricted the credit to an amount not in excess of the same proportion of the United States tax liability which the taxpayer's taxable income from all foreign sources bore to his entire taxable income.

A possible result of the section 904(a) limitations was, of course, that the total amount of foreign taxes paid might exceed the maximum allowable credit, thus subjecting some income to tax by both the United States and a foreign country. In an attempt to eliminate this possibility, Congress in 1958 added subsection (c) to section 904.[4] Section 904(c) allows a 2-year carry-

---

September 30, 1973, Mandrel was merged into Petty Geophysical Engineering Co. which was wholly owned by International. The entity which resulted from the merger was renamed Petty-Ray Geophysical, Inc. One year later, on September 30, 1974, International changed its name to Geosource, Inc. On July 31, 1975, Geosource, Inc. merged downstream into its subsidiary, Petty-Ray Geophysical, Inc., which then changed its name to Geosource, Inc.

2. All section references are to the Internal Revenue Code of 1954, except as otherwise indicated.

3. The Revenue Act of 1921 introduced the first limitation on the allowable foreign tax credit and subsequent Revenue Acts imposed a variety of limitations. At the time of its enactment,

section 904 of the 1954 Code contained a per-country limitation. In 1960, Pub.L. 86–780, 74 Stat. 1010, amended section 904 to allow a taxpayer to elect the application of an overall limitation in lieu of the per-country limitation. This option existed until the Tax Reform Act of 1976, Pub.L. 94–455, repealed the per-country limitation, leaving only the overall limitation which became mandatory. *See generally* 5 Mertens, § 33.11.

4. Section 42(a) of the Technical Amendments Act of 1958, Pub.L. 85–866, added subsection (c) to section 904. Subsection (c) was redesignated subsection (d) and amended by section 1(c) of Pub.L. 86–780, *supra*. Section 1031 of the Tax Reform Act of 1976 again amended the subsection and restored its designation as sub-

back and a 5-year carryover of the excess foreign taxes paid over the amount of the section 904(a) limitations. The excess is first carried back to the second preceding year and added to the foreign taxes paid for that year. If such amount exceeds the applicable limitations for the second preceding year, the excess is next applied to the first preceding year, then to the first succeeding year and so forth up to the fifth succeeding year. *See generally* 5 Mertens § 33.12b. No carryback or carryover is allowed from a year in which the overall limitation was elected to a year in which the per-country limitation was used or vice versa. Section 904(e)(2).[5]

B. In 1960, 1961, and 1962 Mandrel made certain payments, denominated as taxes,[6] to foreign countries and claimed a foreign tax credit against its United States tax liability. Mandrel's foreign taxes in each of those 3 years exceeded its allowable foreign tax credit. The excess foreign taxes for 1960 could not be carried over to any subsequent years under section 904(c), however, because Mandrel had used the per-country limitation in 1960 while electing the overall limitation for 1961 and subsequent years.

On September 21, 1972, Mandrel made payments which were denominated as taxes to the Government of Libya with respect to the years 1960, 1961, and 1962. These payments were made in the amounts of $41,595, $74,634, and $124,968, respectively. The parties have stipulated that the Libyan payments made by Mandrel in 1972 with respect to 1960 could not be utilized by Mandrel as a foreign tax credit in 1960 and could not be carried over to the subsequent years. Furthermore, the operation of the overall limitation of section 904(a) prevented Mandrel from utilizing the 1972 Libyan payments with respect to 1961 and 1962 as foreign tax credits in its United States tax returns for those years. However, pursuant to section 904(c), Mandrel carried over the Libyan payments with respect to 1961 and 1962 to 1963. The carryover of the excess foreign taxes to 1963 resulted in turn in a carryover to 1965 of an investment credit which had previously been allowed for 1963.

Consequently, by a letter of transmittal dated March 6, 1974, Petty-Ray, as successor in interest to Mandrel, submitted by mail to the Internal Revenue Service Center, Austin, Texas, properly executed Forms 843, Claim for Refund, which claimed refunds of $149,747 for 1963 and $49,855 for 1965. By letter dated February 18, 1976, the IRS notified Petty-Ray, whose name had changed in the interim to Geosource,

section (c). Throughout this opinion, the current designation of the subsection, "(c)," is used.

Section 904(c) provided as follows during the years in issue:

"Carryback and carryover of excess tax paid.—

"Any amount by which any such tax paid or accrued to any foreign country or possession of the United States for any taxable year beginning after December 31, 1957, for which the taxpayer chooses to have the benefits of this subpart exceeds the applicable limitation under subsection (a) shall be deemed tax paid or accrued to such foreign country or possession of the United States in the second preceding taxable year, in the first preceding taxable year, and in the first, second, third, fourth, or fifth succeeding taxable years, in that order and to the extent not deemed tax paid or accrued in a prior taxable year, in the amount by which the applicable limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the tax paid or accrued to such foreign country or possession

for such preceding or succeeding taxable year and the amount of the tax for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year (whether or not the taxpayer chooses to have the benefits of this subpart with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if taxpayer for such year chooses to have the benefits of this subpart as to taxes paid or accrued for that year to foreign countries or possessions. For purposes of this subsection, the terms 'second preceding taxable year' and 'first preceding taxable year' do not include any taxable year beginning before January 1, 1958."

5. As in effect during the years in issue.

6. For purposes of this motion only the parties and the court assume these payments to have been creditable taxes under sections 901–907.

Inc., that the claims for refund had been denied. This suit followed.

## II.

■ A. The sole question presented for decision by the defendant's motion for summary judgment is whether the claims for refund were timely filed with the Internal Revenue Service. Section 6511 of the Code sets forth the limitations period for filing a claim for refund or credit of income taxes. Generally, a taxpayer must file a claim within 3 years of the time the return was filed, or within 2 years of the time the tax was paid, whichever is later. In a fashion not uncommon to the Internal Revenue Code, however, the general rule is subject to a number of exceptions.[7] The exception that is pertinent here is for refund claims attributable to the foreign tax credit. This exception is set forth in section 6511(d)(3)(A) and provides as follows:

(3) Special rules relating to foreign tax credit—

(A) Special period of limitation with respect to foreign taxes paid or accrued— If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

(B) Exception in the case of foreign taxes paid or accrued—In the case of a claim described in subparagraph (A), the amount of the credit or refund may ex-ceed the portion of the tax paid within the period provided in subsection (b) or (c), whichever is applicable, to the extent of the amount of overpayment attributable to the allowance of a credit for the taxes described in subparagraph (A).

While the parties seem to agree that the timeliness of the claims for refund of the alleged overpayments for 1963 and 1965 is governed by the 10-year limitations period of section 6511(d)(3)(A), they cannot agree on when that 10-year period commences. Plaintiffs contend that the limitations period commences with the due date for Mandrel's 1963 tax return, i. e., the due date of the return for the year for which a refund attributable to the foreign tax credit is sought. Defendant contends that the limitations period commences with the due dates of Mandrel's tax returns for the years to which the foreign taxes relate, i. e., 1961 and 1962.

The question presented by these contentions can be phrased as whether in cases where there has been a carryover of foreign taxes under section 904(c), the limitations period of section 6511(d)(3)(A) commences with the date prescribed by law for filing the return for the year *from which* the excess foreign taxes are carried, or with the date prescribed by law for filing the return for the year *to which* the excess foreign taxes are carried. The timeliness of the refund claim for 1963 is determined by our answer to this question, because the claim for that year was filed more than 10 years from the due dates of Mandrel's returns for 1961 and 1962, but less than 10 years from the due date of its return for 1963.[8]

■ B. It is an uncontroverted principle that the "starting point in any case involving construction of a statute is the language itself." *St. Paul Fire & Marine Ins.*

7. See e. g. section 6511(d)(2) (net operating loss or capital loss carrybacks); section 6511(d)(4) (investment credit carrybacks); section 6511(d)(7) (work incentive program credit carrybacks).

8. The parties have provided no stipulation as to the date when Mandrel's return for 1965 was due. They appear to have assumed that resolu-tion of the question as to the commencement date of the limitations period for the claim for 1963 will determine the timeliness of the claim for 1965 as well. In any event, our determination that the claim for 1963 was timely filed necessarily makes the claim for 1965, which was filed on the same date, timely.

*Co. v. Barry*, 438 U.S. 531, 541, 98 S.Ct. 2923, 2930, 57 L.Ed.2d 932 (1978); *Hart v. United States*, 218 Ct.Cl. ——, ——, 585 F.2d 1025, 1032 (1978). Here we must construe the meaning of the last clause of section 6511(d)(3)(A) which states that "the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made." Plaintiff vigorously presses upon us its view that the word "claim" in this clause refers back to the initial phrase of section 6511(d)(3)(A) which speaks of "the claim for credit or refund." If that be so, argues plaintiff, the plain language of the clause requires the limitations period to begin with the date prescribed by law for filing the return for the year for which the refund is sought. Defendant concedes that the word "claim" refers to the claim for refund and has not devoted much argument to refuting plaintiff's view of the bare language of section 6511(d)(3)(A). Nor has defendant offered any support whatsoever for its contention that the literal language of the section shows that the limitations period commences with the due date of the return for the year to which the foreign taxes relate.

In any event, we think that the meaning of the language of the last clause of section 6511(d)(3)(A) is clear and unambiguous, and should be construed in the manner urged by plaintiff. Thus, if the time of the commencement of the limitations period of section 6511(d)(3)(A) is to be determined solely on the basis of the language of that section, the limitations period begins to run on the date prescribed by law for filing the return for the year for which a refund is sought.

Defendant, however, urges us not to limit ourselves to the language of section 6511(d)(3)(A), but to look behind the language to the legislative history of both section 6511(d)(3)(A) and section 901(a). Defendant contends that against the background of this legislative history, we should find that Congress intended to have the limitations period for refunds attributable to foreign tax carryovers begin with the year to which the foreign taxes relate, i. e., the year from which they are carried.

■ C. In the recent case of *Hart v. United States, supra,* this court was called on to decide whether the election to claim a credit for foreign taxes under section 901(a) or a deduction under section 164(a)(3) had to be made within 3 years of filing the return as provided in section 6511(a), or within 10 years, as provided in section 6511(d)(3)(A). As here, the court concluded in *Hart* that the bare language of the statute had a clear meaning, but was urged by the defendant to examine the legislative history. *Hart*, 218 Ct.Cl. at ——, 585 F.2d at 1029–30. Judge Nichols, writing for the majority in *Hart*, pointed out that in *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184, n.29, 98 S.Ct. 2279, 2296 n.29, 57 L.Ed.2d 117 (1978), the Supreme Court stated that "[w]hen confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning." On the other hand, he also noted that in *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976), the Supreme Court observed that however clear the statute may appear to be on its face, there is certainly no rule of law forbidding a court from resorting to legislative history to determine the intent of Congress.

After reviewing these guidelines from the Supreme Court, *Hart* concluded that it was appropriate to consider the legislative history "to the extent that it really is persuasive, but we must view that history also with skepticism rather than credulity." *Hart*, 218 Ct.Cl. at ——, 585 F.2d at 1032.[9] We think therefore that here too we should consider the legislative history in determining when the limitations period of section 6511(d)(3)(A) commences, but we do so only "to the extent that it really is persuasive"

---

**9.** To the same effect, *see Aparacor, Inc. v. United States*, 215 Ct.Cl. 596, 600, 571 F.2d 552, 554 (1978), where the court stated that the "normal understanding of the bare language is not con-clusive but it is entitled to prevail unless overcome by a persuasive showing from the purpose or history of the legislation."

and with "skepticism rather than credulity."

■ D. Section 6511(d)(3)(A) was part of the original enactment of the 1954 Code, Pub.L. 83–591, 68A Stat. 808, and has never been amended. The House and Senate Reports on the 1954 Code offer no reasons for the creation of a special limitations period for claims for refunds attributable to the foreign tax credit, nor do the reports explain how Congress intended the section to operate. H.R.Rep.No. 1337, 83d Cong. 2d Sess. A 415 (1954); S.Rep.No. 1622, 83d Cong. 2d Sess. 586 (1954). U.S.Code Cong. & Admin.News 1954, p. 4025. Examination of the 1939 Code and prior Revenue Acts is no more helpful, because they contain no special limitations period for refund claims attributable to the foreign tax credit. These claims were simply subject to the general limitations period for refund claims set forth in the 1939 Code and earlier Revenue Acts. See 10 Mertens § 58.26.

While there is no legislative history for section 6511(d)(3)(A) itself, defendant calls our attention to section 138(d)(1) of H.R. 6712, 80th Cong. 2d Sess., a bill passed by the House of Representatives, but not enacted into law. Section 138(d)(1) provided as follows:

(d) *Limitation On Claims For Refund.*—
(1) Section 322(b) is hereby amended by adding at the end thereof the following new paragraph:
"(7) *Special Period Of Limitation With Respect To Foreign Taxes Paid Or Accrued.*—If the claim for credit or refund relates to an over-payment attributable to any income, war profits, and excess-profits taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by this chapter in accordance with the provisions of section 131 or the provisions of any treaty to which the United States is a party, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be seven years from the date prescribed by law for filing the return for the year with respect to which the claim is made.
\* \* \*"

The House Report on H.R. 6712 stated with regard to section 138(d)(1) that "A special period of 7 years (instead of the usual 3 years) is allowed in section 138(d) of your committee's bill for claiming credits or refunds by reason of an increase in a foreign tax credit resulting from deficiency assessments by a foreign government \* \* \*." H.R.Rep.No. 2087, 80th Cong., 2d Sess. 30.

Defendant argues that both the language of section 138(d)(1) and the House Report make it "clear" that the special 7-year limitations period provided by section 138(d)(1) was intended as a "finite" substitution for the general 3-year limitations period of the 1939 Code. Emphasizing that the language of section 138(d)(1) is all but identical to that of section 6511(d)(3)(A), defendant reasons that in enacting the latter section in 1954 Congress similarly intended the 10-year limitations period of section 6511(d)(3)(A) to be a "finite" substitution for the usual 3-year limitations period of the 1954 Code. Finally, defendant argues that the plaintiff's interpretation of section 6511(d)(3)(A) results in a limitations period in excess of this "finite" period of 10 years.

Defendant's section 138(d)(1) argument is weakened by a number of flaws, each of which individually is sufficient to cast doubt on the argument's soundness; viewed collectively, these flaws cause the argument to collapse. First, defendant principally bases its argument on the committee report of a provision which was not enacted into law. Obviously such a report is of limited significance, representing as it does a view of a proposal rejected by Congress. Second, to the extent defendant's argument is based on the bare language of section 138(d)(1), we do not think that it supports defendant's contentions any more than does the literal language of section 6511(d)(3)(A). As defendant readily notes, the wording of the two sections is virtually identical. Consequently, our interpretation of the language of section 6511(d)(3)(A) applies equally to that of section 138(d)(1). Third, it is questionable whether the intent of the 1948 House of Representatives can be attributed

to the 1954 Congress. The legislative history of section 6511(d)(3)(A) makes no reference to section 138(d)(1) of H.R. 6712, nor does it refer to the House Report on that provision. H.Rep.No. 1337 and S.Rep.No. 1622, *supra*, at page 8. Fourth, even assuming such a carried-over intent, we do not think that defendant has established any proposition truly relevant to the question in issue here. The argument that Congress intended the limitations period of section 6511(d)(3)(A) to be finite and limited to 10 years, does not address the question of when the 10-year period was intended to begin. Defendant simply assumes that the limitations period commences with the year to which the foreign taxes relate and then asserts that the interpretation called for by the language of section 6511(d)(3)(A) would allow claims which were filed more than 10 years from that assumed commencement date.

Finally, as plaintiffs have pointed out, even if the limitations period were to commence with the year to which the foreign taxes relate, defendant's logic would, in some circumstances, grant the taxpayer more than 10 years in which to file a claim for refund.[10] In sum, defendant's contentions with regard to section 138(d)(1) of H.R. 6712 fall far short of the "persuasive showing" necessary to overcome the bare language of section 6511(d)(3)(A). *Cf. Aparacor v. United States*, 215 Ct.Cl. at 600, 571 F.2d at 554.

E. Defendant also contends that the legislative history of section 901(a) supports its view that the limitations period of section 6511(d)(3)(A) commences with the date of the return for the year to which the foreign taxes relate. Specifically, defendant relies on the similarity of the statutory schemes of section 901(a) and section 6511(d)(3)(A) and on several statements in the congressional committee reports accompanying a 1960 amendment to the second sentence of section 901(a).

As discussed in part I, *supra*, of this opinion, a taxpayer has a choice between the benefits of a section 901 credit and a section 164(a)(3) deduction for foreign taxes paid or accrued. The second sentence of section 901(a) allows this choice to be made or changed at any time before the expiration of the period allowed for making a claim for an income tax refund, i. e., the period prescribed by section 6511. As enacted in the 1954 Code, the second sentence of section 901(a) read as follows:

> Such choice may be made or changed at any time prior to the expiration of the period prescribed for making a claim for credit or refund of the tax against which the credit is allowable.

When the foreign tax credit carryover provisions of section 904(c) were added to the Code by the Technical Amendments Act of 1958 (*see* n.4, *supra*), the committee reports accompanying the Act offered no explanation as to how, if at all, the 2-year carryback and the 5-year carryforward of section 904(c) affected the period during which the 901(a) choice between a credit and a deduction could be made. H.Rep.No. 775, 85th Cong., 1st Sess. 27–28, 82–85 (1957); S.Rep.No. 1983, 85th Cong., 2d Sess. 117 (1958). In 1960, however, the second sentence of section 901(a) was amended by section 3(b) of Pub.L. 86–780 (n.4, *supra*) to read as follows:

> Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year.

This amendment is described as follows in the House and Senate committee reports accompanying Pub.L. 86–780:

---

**10.** Plaintiffs posit the situation in which (1) a taxpayer in 1972 pays income taxes to a foreign country in respect of its 1962 taxable year; (2) the taxpayer has exceeded its section 904(a) limitation for 1962 and carries the foreign taxes paid in 1972 for 1962 back to 1960 under section 904(c); and (3) the taxpayer files a claim for refund in 1972 for taxes paid in 1960 attrib-

utable to the foreign tax credit carryback. Defendant's view that the limitations period of section 6511(d)(3)(A) commences in the year to which the foreign taxes relate would make 1962 the determinative year. Consequently, the taxpayer's claim for 1960 would be timely—resulting in a 12-year limitations period under defendant's own theory.

In applying the second sentence of section 901(a) in a case where a carryback or carryover of taxes under section 904 is involved, the taxable year which is determinative of the period for making the choice between a credit and a deduction is the taxable year from which the excess taxes may be carried (and not the taxable years to which they may be carried). In addition, the excess taxes for such taxable year may not be used as a credit in another taxable year to which carried unless the taxpayer chose to take a credit (rather than a deduction) for such other taxable year within the period prescribed by the second sentence of section 901(a) for making the choice for such other taxable year.

For example, assume that foreign taxes in excess of the per-country limitation of section 904(a)(1) are paid or accrued for 1961. Even though, under section 904(d), such excess may be carried back to 1959 and 1960, and may be carried over to 1962, 1963, 1964, 1965, and 1966, the determinative year for the period for making the choice of taking a credit or deduction with respect to these taxes is 1961 (in the normal case this period will expire March 15, 1965, in the case of a corporation, and April 15, 1965, in the case of any other taxpayer). Assuming a timely election for 1961, no amount may be used as a credit for any taxable year to which the 1961 taxes may be carried unless, for that other year also, the choice of the foreign tax credit route (in lieu to the deduction route) was also made within the time prescribed for such other taxable year. [H.Rep.No. 1358, 86th Cong., 2d Sess. 12 (1960); S.Rep.No. 1393, 86th Cong., 2d Sess. 16 (1960)] U.S.Code Cong. & Admin. News 1960, pp. 3770, 3785.

Defendant contends that these excerpts establish that Congress intended the period for making a choice between a credit and a deduction to commence in the year from which the excess foreign taxes are carried.

Defendant reasons that since the period for making that choice is the limitations period for claiming a refund under section 6511(d)(3)(A), that limitations period must therefore also commence with the year from which the excess foreign taxes are carried.

Examining this legislative history with "skepticism rather than credulity," as we must, having earlier concluded that the language of section 6511(d)(3)(A) is clear on its face, we do not think it is so persuasive that it can overcome the plain meaning of the words of section 6511(d)(3)(A). First, as we have already observed in *Bank of America v. United States*, 180 Ct.Cl. 111, 377 F.2d 575 (1967), the 1960 changes in the language of the second sentence of section 901(a) are "so slight that they appear to be insignificant." 180 Ct.Cl. at 118, 377 F.2d at 579–80. *Accord Hart v. United States*, 218 Ct.Cl. at ——, 585 F.2d at 1031.[11] As we also noted in both *Bank of America* and *Hart*, the committee reports acknowledge that the changes in the second sentence of section 901(a) were intended only as a "clarification" of existing law. H.Rep.No. 1358, 86th Cong., 2d Sess. 11–12 (1960); S.Rep.No. 1393, 86th Cong., 2d Sess. 15 (1960); *Bank of America*, 180 Ct.Cl. at 119, 377 F.2d at 579; *Hart*, 218 Ct.Cl. at ——, 585 F.2d at 1031. Consequently, the committee remarks on the election period represent only the views of a later Congress on the enactments of an earlier Congress. As such, these remarks have "little, if any, significance." *See Hart*, 218 Ct.Cl. at ——, 585 F.2d at 1032, and cases cited therein. More importantly, if these excerpts from the committee reports are of little value on the issues which they directly address, *a fortiori*, they are even less helpful on the question of the commencement of the limitations period of section 6511(d)(3)(A), for the 1960 Act did not amend that section and the reports do not even purport to discuss the issue. Therefore, we do not think that

**11.** The 1960 amendments added the phrase "for any taxable year," substituted the word "before" for "prior," and the phrase "imposed by this chapter for such taxable year" for "against which the credit is allowable." Defendant does not contend that these changes had any significance in terms of the issue before the court here.

the statements in the reports cited by defendant can be viewed as a persuasive statement of the intent of Congress that the limitations period of section 6511(d)(3)(A) was to commence at a time other than that called for by the language of the section.

### III.

In sum, we conclude that section 6511(d)(3)(A) should be construed in accordance with the normal understanding of its language, and that plaintiffs' claims for refund were timely filed with the Internal Revenue Service. Defendant has failed to convince us that a different interpretation should be ascribed to the statutory language. In addition to its other arguments, the defendant has advanced several policy considerations which it maintains favor the result it advocates. These further contentions do not merit discussion, because in our opinion, it is quite clear that they are not sufficient to overcome the presumption that Congress "meant what it enacted." *Hart*, 218 Ct.Cl. at ——, 585 F.2d at 1035.

Accordingly, defendant's motion for summary judgment is denied, and the case is remanded to the trial division for further proceedings.