# United States Court of Appeals for the Federal Circuit

_____

**ALBEMARLE CORPORATION & SUBSIDIARIES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2015-5015

_____

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00184-MBH, Judge Marian Blank Horn.

_____

Decided: August 13, 2015

_____

JEROME LIBIN, Sutherland Asbill & Brennan LLP, Washington, DC, argued for plaintiff-appellant.

DEBORAH K. SNYDER, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TERESA E. MCLAUGHLIN, GILBERT STEVEN ROTHENBERG, CAROLINE D. CIRAOLO, DIANA L. ERBSEN.

_____

Before PROST, *Chief Judge,* BRYSON, and HUGHES, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Albemarle Corporation and Subsidiaries ("Albemarle") appeals from a final judgment of the Court of Federal Claims dismissing its complaint for a refund of certain taxes paid in the 1997 and 1998 tax years. The court held that it lacked subject matter jurisdiction over Albemarle's claims because Albemarle had not filed its refund claims within the 10-year limitations period prescribed in 26 U.S.C. § 6511(d)(3)(A). We affirm.

I

In 1996, a Belgian subsidiary of Albemarle issued 20-year debentures to Albemarle and certain of its U.S. subsidiaries. Interest payments were made on the debentures from 1997 through October 2001. The Belgian subsidiary, however, did not pay Belgian withholding taxes on the interest payments, because it believed the payments to be tax-exempt.

In 2001, Belgian tax authorities issued a notice of adjustment to Albemarle for the tax years 1996 through 1998. The notice provided, in part, that the debenture interest payments made between 1997 and 2001 were subject to Belgian withholding tax at the statutory rate of 25%. Albemarle submitted a written protest to the tax authorities objecting to the assessment of withholding tax on the payments.

In January 2002, Albemarle and the Belgian tax authorities reached an agreement regarding the dispute. Albemarle agreed to pay withholding tax at the rate of 15% on all interest paid from 1997 through 2001. It then made two payments to the Belgian authorities in January 2002 and August 2002 that satisfied the total amount of the taxes due.

On May 15, 2009, Albemarle filed an amended consolidated U.S. income tax return for the 2002 tax year, in which it claimed refunds of $1,416,740 in foreign tax

credits attributable to the withholding taxes it had paid pursuant to the agreement with the Belgian tax authorities.

The Internal Revenue Service allowed Albemarle's refund claims for the years 1999, 2000, and 2001, but it disallowed Albemarle's claims for 1997 and 1998. The IRS found that the 1997 and 1998 refund claims had not been filed within the 10-year limitations period provided in section 6511(d)(3)(A). According to the IRS, Albemarle should have filed its 1997 refund claim on or before March 15, 2008, and its 1998 refund claim on or before March 15, 2009, in order for those claims to be timely.

Albemarle filed suit in the Court of Federal Claims, seeking to recover a total refund of $825,846 attributable to the foreign tax credits for its 1997 and 1998 Belgian withholding taxes. The court agreed with the government, finding Albemarle's claims for the 1997 and 1998 tax years untimely. This appeal followed.

## II

Whether Albemarle's refund claims were timely filed depends on the interpretation of section 6511(d)(3)(A) of the Internal Revenue Code. That section was amended in a material way in 1997. Both the pre-1997 and the post-1997 versions of the statute are at issue in this case. Because Albemarle's refund claim for 1997 is governed by the pre-1997 version of the statute and the refund claim for 1998 is governed by the post-1997 version, we address the two claims separately.

## A

Section 6511(d)(3)(A) provides a 10-year "special period of limitation" for filing refund claims for foreign tax credits. The post-1997 version of the statute, which governs Albemarle's refund claim for the 1998 tax year, provides as follows:

> If the claim for credit or refund relates to an over-payment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued.

26 U.S.C. § 6511(d)(3)(A).

The parties' dispute over the 1998 tax year claim centers on the statutory language "from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued." Albemarle contends that "the year in which such taxes were actually paid or accrued" refers to the year in which its contested foreign tax liability was finalized and established. In this case, that would be 2002. The government, on the other hand, argues that the critical year is the year in which Albemarle's foreign taxes originated, i.e., 1998.

If Albemarle is correct, the 10-year limitations period for filing refund claims for foreign tax credits for 1998 started to run on March 15, 2003—"the date prescribed by law for filing the return for" the 2002 tax year—rendering Albemarle's May 15, 2009, filing timely. If the government is correct, the limitations period started to run on March 15, 1999, making Albemarle's May 15, 2009, refund claim untimely.

1

For an accrual-based taxpayer such as Albemarle, the 10-year limitations period for filing a claim for foreign tax credits under the current version of section 6511(d)(3)(A)

runs "from the date prescribed by law for filing the return for the year in which such taxes were actually . . . accrued."[1]

The word "accrue" is used in several provisions of the Tax Code pertaining to foreign tax credits. Section 901 of the Code allows a taxpayer to claim foreign tax credits in the amount of "any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country." 26 U.S.C. § 901(b)(1). Section 905 similarly provides that foreign tax credits may be taken "in the year in which the taxes of the foreign country . . . accrued[.]" 26 U.S.C. § 905(a).

It is undisputed that for purposes of sections 901 and 905, Albemarle's contested foreign taxes "accrued" in 1998, the year of origin of the tax liability. That is evident from the fact that Albemarle claimed foreign tax credits in an amount equal to its 1998 Belgian tax liability, *see* 26 U.S.C. § 901(b)(1), and that it intends to use those credits to offset its U.S. tax liability for the 1998 tax year. *See* 26 U.S.C. § 905(a).

Albemarle argues that the use of the term "actually" in section 6311(d)(3)(A) requires that the year of accrual for limitations purposes be determined differently from the way it is determined for purposes of sections 901 and 905. Albemarle's argument is that the word "actually" must be given its ordinary meaning of "in fact" or "in reality," and that a contested foreign tax cannot "in fact" accrue until the tax liability is finally established, which

---

[1] The term "actually" in the statutory phrase "actually paid or accrued" could be read to modify only "paid" (but not "accrued") or it could be read to modify both "paid" and "accrued." Both parties have adopted the latter reading, and we agree that is the most natural reading of the statute.

in this case would be 2002. The government, on the other hand, argues that in light of the IRS's longstanding position that contested foreign taxes "relate back" to the year of origin for purposes of the foreign tax credit statute, foreign taxes "actually accrue" in the year of origin, i.e., the year in which the foreign tax liability arose.[2]

The "plain meaning" interpretation of the word "actually" does not resolve the parties' dispute. In the case of a contested foreign tax, either of two years could be regarded as the year that the tax "actually accrued"—the year of origin for the tax or the year in which the contested liability is finalized. Simply interpreting "the year in which such taxes were actually . . . accrued" to mean the year in which the taxes "in fact" accrued provides no guidance as to which of those two years was intended to be the starting point for the 10-year limitations period under section 6511(d)(3)(A).

Other provisions of the Tax Code likewise supply little help in determining the meaning of the word "actually" in the phrase "actually . . . accrued." Other than section 6511(d)(3)(A), no provision of the foreign tax credit statute uses the phrase "actually paid or accrued." We therefore look to the context in which the 1997 statutory language was enacted in order to determine the meaning of that phrase.

2

Prior to the 1997 amendment to section 6511(d)(3)(A), the 10-year limitations period ran from the date "prescribed by law for filing the return for the year with

---

[2]   *See, e.g.*, Rev. Rul. 58-55, 1958-1 C.B. 266 (contested foreign tax "is accruable for the taxable year to which it relates even though the taxpayer contests the liability therefor and such tax is not paid until a later year").

respect to which the claim is made." 26 U.S.C. § 6511(d)(3)(A) (1994). The 1997 amendment was enacted in response to a 1980 decision of the Court of Claims involving "carryover" foreign tax credits under section 904 of the Tax Code. In order to understand the effect of the amendment, some background is necessary.

Section 904(a) limits the amount of foreign tax credit that a taxpayer may take in a given year. As a result, a taxpayer may end up with "excess" foreign taxes for which credits may not be taken in the tax year of origin. Section 904(c) allows such excess taxes to be "carried back" to certain preceding tax years and "carried over" to certain succeeding tax years. The statute provides that those excess taxes "shall be deemed paid or accrued" in the carryover or carryback years and may be taken as credits in those years. *See* 26 U.S.C. § 904(c).

Treasury Regulation section 1.904-2 governs the "carryback and carryover of unused foreign tax" under section 904(c) of the Tax Code. For an accrual-based taxpayer, the regulation explains that a foreign tax "actually accrues" in the year of origin, and a portion of that tax—if unused in the initial year—may be "deemed accrued" in the year to which the excess tax is carried. *See* 26 C.F.R. § 1.904-2(g) (example 5).

When there has been a carryover of excess foreign taxes, an issue has arisen as to how the limitations period under section 6511(d)(3)(A) should be calculated regarding claims for credit for the excess taxes. In *Ampex Corp. v. United States*, 223 Ct. Cl. 428 (1980), the Court of Claims concluded that the limitations period should be determined by reference to the year to which the excess taxes are carried. The IRS disagreed with that decision, and in 1984 it issued a revenue ruling in which it took the position that the limitations period should be determined by reference to the year of origin for the excess taxes. Rev. Rul. 84-125, 1984-2 C.B. 125.

Congress amended section 6511(d)(3)(A) in 1997 to resolve the conflict between the decision in *Ampex* and the position taken by the IRS in the 1984 revenue ruling. The prior version of the statute provided that the statute of limitations for foreign tax credit claims was 10 years "from the date prescribed by law for filing the return for the year with respect to which the claim is made." The 1997 amendment changed that language to read 10 years "from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued." The committee reports on the legislation explained that the change was meant to clarify that, consistent with the IRS's position, the limitations period of section 6511(d)(3)(A) would be determined by reference to the year "in which the foreign taxes were paid or accrued (and not the year to which the foreign tax credits are carried)." H.R. Rep. No. 105-148, at 553 (1997); S. Rep. No. 105-33, at 180 (1997); H.R. Rep. No. 105-220, at 576-77 (1997) (Conf. Rep.).

The 10-year limitations period for a contested foreign tax had been determined with reference to the year of origin since long before the 1997 amendment, because the year of origin is "the year with respect to which the [refund] claim is made," 26 U.S.C. § 6511(d)(3)(A) (1994), including in the case of contested taxes. *See* Rev. Rul. 84-125, 1984-2 C.B. 125; Rev. Rul. 58-55, 1958-1 C.B. 266. Nothing in the background of the 1997 amendment suggests that Congress intended for that amendment, which was directed solely at correcting a court decision governing carryover foreign taxes, to change the longstanding rule under which the special limitations period had been calculated for contested taxes.

3

Further guidance as to the meaning of the statutory phrase "actually paid or accrued" can be garnered from the Treasury Regulation that governs carryover of foreign

taxes, Treas. Reg. § 1.904. Section 1.904-2(c) of the regulation addresses whether a taxpayer is in an "excess limitation" position for a tax year, i.e., whether the taxpayer may absorb excess taxes carried from another year. The regulation uses the same language—"actually paid or accrued"—that is used in the 1997 amendment to section 6511(d)(3)(A). *See* 26 C.F.R. § 1.904-2(c)(1)-(2). The regulation provides, for example, that when a "per-country limitation" is imposed on tax credits for a given tax year, the sum of the taxes "actually paid or accrued" and those "deemed paid or accrued" in that year must be smaller than the per-country limitation in order to yield an "excess limitation," which can then be used to absorb unused foreign taxes carried from another year. 26 C.F.R. § 1.904-2(c)(1); *id.* § 1.904-2(g) (example 5).

Applying the parties' respective interpretations of the phrase "actually . . . accrued" to section 1.904-2(c) would yield quite different results in the context of a contested foreign tax liability. Pursuant to that subsection, foreign taxes "actually paid or accrued" in a tax year are counted toward the credit limitation for the same year. Thus, if we adopted Albemarle's interpretation and held that a contested foreign tax "actually accrues" in the contest resolution year, the foreign tax would be counted toward the credit limitation for the contest resolution year. Under the government's interpretation, by contrast, a contested foreign tax "actually accrues" in its year of origin and would be counted instead toward the credit limitation for the year of origin of the tax.

The government's interpretation is correct. It is well established that a contested foreign tax is counted toward the credit limitation of its year of origin, because that tax is used to offset the U.S. tax liability for the year of origin. *See, e.g.*, *United States v. Campbell*, 351 F.2d 336, 338 (2d Cir. 1965); *United States v. Cruz*, 698 F.2d 1148, 1150 (11th Cir. 1983); Rev. Rul. 58-55, 1958-1 C.B. 266. Applying Albemarle's interpretation of the phrase "actually . . .

accrued" would lead to the anomalous result that a tax-payer could take a tax credit for a contested foreign tax in one year (the year of origin), but the credit would be counted toward the limitation applicable to another year (the contest resolution year), which is contrary to the clear intent of the regulation.

The phrase "actually . . . accrued" in the 1997 amendment to section 6511(d)(3)(A) appears to have been taken directly from Treasury Regulation section 1.904. Where identical language is used in statutes or regulations, we assume that the language is intended to have the same meaning. *See Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1338-39 (Fed. Cir. 2003), citing *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 342 (1994). Congress's decision to use the same phrase in the 1997 statute suggests that Congress meant for that phrase to have the same meaning in the statute that it did in the regulation, i.e., to refer to the year of origin of the tax liability in question.

4

Albemarle argues that contested foreign taxes cannot "actually accrue" for purposes of section 6511(d)(3)(A), until the contest is over and liability is established. It relies principally on *Dixie Pine Products v. C.I.R.*, 320 U.S. 516 (1944), where the Supreme Court established what is known as the "contested tax doctrine."

In *Dixie Pine*, the Supreme Court affirmed the IRS's disallowance of a deduction under section 23(c) of the Revenue Act of 1936, which permitted deductions from gross income of taxes "paid or accrued within the taxable year." The Court held that a taxpayer may deduct from gross income only "a liability which really accrues in the taxable year." 320 U.S. at 519. For an accrual-based taxpayer, the Court held that tax liability cannot accrue where "the liability is contingent and is contested by the taxpayer"; instead, the taxpayer must wait for the contest

proceeding to run its course and may claim a deduction "only for the taxable year in which its liability for the tax was finally adjudicated." *Id.*

Albemarle also invokes section 461 of the Tax Code and related regulations, which apply an "all events test" to determine when a federal tax liability is deemed to have been incurred for taxpayers who use an accrual method of accounting. The pertinent regulation implements the statute by providing:

> Under [an accrual] method, a liability is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability.

26 C.F.R. § 1.446-1(c)(1)(ii); *see* 26 U.S.C. § 461(h)(4).[3]

According to Albemarle, because the "all events test" for a contested foreign tax cannot be satisfied until the taxpayer's liability is finally established, the year in which the tax "actually accrued" for purposes of section 6511(d)(3)(A) must be the year in which the taxpayer resolved its dispute with the foreign government.

Neither the "contested tax doctrine" of *Dixie Pine* nor the "all events test" of section 461 dictates when a contested foreign tax liability "actually . . . accrued" in the

---

[3]    Treasury Regulation section 1.461-4(g)(6)(iii)(B) provides that, for foreign tax liability that is creditable under section 901, "economic performance occurs when the requirements of the all events test (as described in § 1.446-1(c)(1)(ii)) other than economic performance are met." 26 C.F.R. § 1.461-4(g)(6)(iii)(B).

different context of section 6511(d)(3)(A). It has long been recognized that the contested tax doctrine, which is derived from the law regarding deductions, is not strictly applicable to claims of foreign tax credits. *See Cuba R. Co. v. United States*, 124 F. Supp. 182 (S.D.N.Y. 1954) (contested tax doctrine held inapplicable to cases involving foreign tax credits because the unambiguous language of section 131(d) of the Internal Revenue Code of 1939—now section 905 of the Code—dictates that foreign tax credits may be taken in the year "in which the taxes of the foreign country accrued," even if those taxes were contested and paid in a later year); Rev. Rul. 58-55, 1958-1 C.B. 266 (contested tax doctrine applied to accrual of foreign taxes for deduction purposes but not for credit purposes).

Instead, the mechanism by which a taxpayer may claim credits for a contested foreign tax is governed by the so-called "relation back" doctrine. As explained above, a contested foreign tax "is accruable for the taxable year to which it relates even though the taxpayer contests the liability therefor and such tax is not paid until a later year." Rev. Rul. 58-55, 1958-1 C.B. 266.

In *United States v. Campbell*, the Second Circuit illustrated the operation of the relation back doctrine with the following example:

> [I]f the taxpayer contests his liability for a foreign tax imposed on income in 1960, and this liability is finally adjudicated in the foreign country in 1965, the credit may not be claimed until 1965, but the foreign tax imposed on 1960 income will be offset against the United States 1960 tax just as if it had accrued in 1960.

351 F.2d at 338 (citation omitted).

Employing the same analysis, a leading commentator has observed that under the relation back doctrine, contested taxes effectively "accrue at two different times

two different purposes." Elisabeth A. Owens, *The Foreign Tax Credit* 328 (1961). That is, for the purpose of determining in what year the right to claim the credit arises, the contested tax doctrine and section 461 apply. For the purpose of determining against which U.S. tax the foreign tax is to be credited, the contested tax doctrine does not apply, and the tax is held to have accrued in the taxable year "to which the tax relates."

Therefore, in the context of the statutes governing eligibility for foreign tax credits, including section 6511(d)(3)(A), we reject Albemarle's argument that the year that the foreign tax "actually . . . accrued" is controlled by *Dixie Pine* and section 461 of the Tax Code.

5

Albemarle's interpretation of section 6511(d)(3)(A) is also inconsistent with the purpose underlying the statute. Congress provided a special 10-year limitations period for filing a refund claim for foreign taxes—as opposed to three years for filing a claim for domestic taxes—out of concern that a taxpayer may be barred from asserting a claim if foreign governments adjust the foreign tax liabilities after the initial three-year period. *See Hart v. United States*, 585 F.2d 1025, 1029 (Ct. Cl. 1978) ("The impetus for [the 10-year limitations period] proposal was concern over inequities arising from the ability of the Service to assess additional income taxes whenever a taxpayer received a refund of foreign taxes, no matter when that refund was received, while the taxpayer was barred from asserting a claim for refund of United States income taxes when foreign taxes were assessed or increased after the three year period from the date of filing."), citing *Bank of America v. United States*, 377 F.2d 575, 579 (Ct. Cl. 1967); 26 U.S.C. § 6511(a).

Under Albemarle's interpretation, however, the 10-year limitations period would start to run only after the tax liability has been finalized; in other words, no more

adjustments would be made and all that would be left for the taxpayer to do in the 10-year period would be to file a refund claim.

It is highly unlikely that Congress intended to provide the prolonged 10-year limitations period simply to enable a taxpayer to complete the filing process following the resolution of its foreign tax liability.  In light of the fact that a domestic taxpayer is given only three years to file a refund claim, it is evident that the much longer period for filing foreign tax claims was intended to take account of the time needed to resolve foreign tax liability.  Thus, we reject Albemarle's contention that the special limitations period under section 6511(d)(3)(A) starts to run only after contested liabilities have been finalized.  We agree with the government that the limitations period should be measured with reference to the year of origin for such taxes.[4]

In sum, we hold that the 10-year limitations period for filing a refund claim for Albemarle's 1998 Belgian withholding taxes started to run on March 15, 1999, "the date prescribed by law for filing the return for" the 1998 tax year.   26 U.S.C. § 6311(d)(3)(A).   For that reason,

---

[4]     In the event that a taxpayer's foreign tax dispute lasts longer than 10 years, the taxpayer may either seek the IRS's approval for an extension of the 10-year limitations period or file a "protective refund claim" with the IRS to guard against the running of the limitations period.   The absence of other cases addressing the issue presented here indicates that the limitations period of 10 years from the year of origin has proved sufficient to resolve foreign tax liability contests.  Even this case is not evidence that the 10-year rule has created difficulties; Albemarle admits that its failure to file a refund claim shortly after the 2002 resolution of its tax dispute was the result of an oversight on its part.

Albemarle's May 15, 2009, claim for credits for its 1998 Belgian taxes is time-barred.

## B

Unlike Albemarle's refund claim for the 1998 Belgian taxes, its claim for the 1997 Belgian taxes is governed by the pre-1997 version of section 6511(d)(3)(A).

The provision amending section 6511(d)(3)(A) in 1997 was part of the Taxpayer Relief Act of 1997, Pub. L. No. 105-34. 111 Stat. 788. Section 1056(b) of that Act provided that "The amendment made by subsection (a) [i.e., the amendment to section 6511(d)(3)(A)] shall apply to taxes paid or accrued in the taxable years beginning after the date of the enactment of this Act." Pub. L. No. 105-34, § 1056(b), 111 Stat. 945. The Act was enacted on August 5, 1997. Albemarle's 1997 Belgian taxes accrued in the 1997 taxable year, which began on January 1, 1997, and before the enactment of the Act. The 1997 amendment to section 6511(d)(3)(A) therefore does not apply to those taxes.

Under the pre-1997 version of section 6511(d)(3)(A), the 10-year limitations period started to run on the date "prescribed by law for filing the return for the year with respect to which the [refund] claim is made." 26 U.S.C. § 6511(d)(3)(A) (1994). Albemarle claimed credits for its 1997 Belgian withholding taxes, and it intended to use those credits to offset its U.S. tax liability for the 1997 tax year. Thus, "the year with respect to which [Albemarle's refund] claim is made" was the year 1997. *See* Rev. Rul. 84-125, 1984-2 C.B. 125 (under the pre-1997 version of section 6511(d)(3)(A), the limitations period is measured with reference to the year of origin for the contested foreign tax).

Accordingly, the 10-year limitations period for Albemarle's 1997 refund claim started to run on March 15, 1998, i.e., the due date for filing the return for the year

1997.  Albemarle's May 15, 2009, claim for a refund of 1997 taxes is therefore untimely.

**AFFIRMED**